Good morning, Your Honor. Mr. Barrow, may it please the Court, on behalf of Mr. Covarrubias, excellent pronunciation, and Stephen Sherlach, and I ask permission to reserve a minute at the end in rebuttal argument. Last year in United States v. Ramirez, this circuit, held with the Collective Knowledge Doctrine, may justify a warrantless stop of an automobile when an officer receives an appropriate order or request from another officer. Just stop there a minute. I've noticed this in the brief. There's a stop and there's a search. There was a permissible stop for a speeding violation. Isn't that correct? Okay, so the initial stop was constitutional? Correct, Your Honor. Okay, you're talking about what happened after the stop, the prolongation of the stop. Exactly. Okay, I just want to make sure you're focused on the right events. Thank you. Thank you, Your Honor. Well, I think that that is still relevant to the question here in query, because I think the Court is asked to define the minimum requirements of what an appropriate order or request is, because in this situation Judge Brown held that once that initial stop was concluded, that Mr. Covarrubias and the passenger of the vehicle were unlawfully detained after that. Right, but we have two recent cases which say that, based on the Supreme Court's decision, that which overrule or at least limited one of our prior decisions. I happen to be the author of it, so I have an interest in the follow-on jurisprudence, which appears to establish the rule that you may ask unrelated questions so long as you don't unduly prolong the stop beyond the purposes for which the initial stop was made. So perhaps you could focus your argument on that and the context. We've upheld the stop for up to, what, 8 to 10, 15 minutes. Well, after the initial stop occurred in this case and questioning went on, which was unrelated to the reasons for the stop, which is the speeding ticket, there were inquiries made of Mr. Covarrubias and the passenger as it related to what they were doing in the Los Angeles area, who they were visiting, and the like. Judge Brown found specifically in the record that those  charges were unrelated. That's Chavez-Valenzuela, but that's been limited by the Supreme Court, which, and by our own follow-on cases, would suggest that as long as the stop and the additional questions don't unduly prolong it beyond the initial reason for the stop, that there's no constitutional violation. And I'm not sure. I think those cases hadn't been decided at the time this case was in the district court, so I can understand why the focus wasn't as it has to be now. So can you help us with that? Well, sure, Your Honor. And what occurred here was Mr. Covarrubias was held at least an estimated 20 minutes beyond the ending of the traffic citation process, which included the questioning, when a drug dog was called out, which didn't appear to be in any way related to the JTF investigation here. So we have certainly a longer story. I'm sorry. Not related? They called out the JTF. We're talking about the initial. Yes, Your Honor. They brought the attention of the officers to this vehicle by virtue of a narcotics officer saying, or having it communicated, that this was a reasonable inference, the only reasonable inference, I think. Then the car was speeding. So you sort of had two reasons. Number one, they were going to probably stop the car anyway, maybe for whatever reason, but they were primarily interested in the narcotics now that they called in a dog. Is that right? Well, Your Honor, it wasn't the ATF or JTF team that called in the dogs. It was Deputy Hazard on the scene, which is very different than the JTF team. He did it because he thought that this was a narcotics, somehow a narcotics investigation. That's correct, Your Honor. But Judge Brown found on the record here that was developed, and that this minimal request of keep an eye out for, there were no specific reasons, no articulable facts by which she could have concluded this was a drug case. And specifically, he had nothing that he developed in the questioning of Mr. Clover Abias and the passenger. So you're saying that keeping an eye out for the car was not, it should not be reasonably, it's not really a command or a suggestion that the car be stopped. It's just look at it. Absolutely, Your Honor. And that's what Deputy Hazard testified in the hearing, was specifically that if he didn't develop cause, he wasn't going to stop the vehicle. Well, but he had cause. Pardon? He had cause. That's correct, Your Honor. And what did he think the vehicle, what did he testify the vehicle was likely to be involved in? He understood it to be a walled off stop, didn't he? Correct, Your Honor. But there were no specific facts related to him that indicated that it was drugs. And he believed it. That was his subjective belief. He had a subjective belief based on what he was instructed to do. He found an independent reason to stop the car. So are you suggesting then, I think you do, you argue that the knowledge of the folks who had probable cause to believe, or at least reasonable suspicion to believe, that Covarrubias was involved in transporting drugs can't be attributed to the officer here? Because they didn't pass on any details of why they had those beliefs? Well, not just because no details were passed on, but because it wasn't a causal factor. And that's what the court here said in Ramirez. It wasn't a what? In Ramirez. I'm sorry, but it wasn't a causal factor. Causal factor. Causal factor in the stop. In Ramirez, the court specifically looked there and said, even if Mr. Ramirez and Mr. Beltran were stopped illegally, it wasn't a causal factor in the stop and detention. And here it was the causal factor. Or excuse me, there was no causal factor because Deputy Hoslett, unlike Officer Holbin in Ramirez, did not rely upon that to make the stop. He didn't need to. He had an independent reason. But once he stopped, he also had in mind that this fellow had drugs. Sure. Had a belief in that. And if you impute the collective knowledge of the team that got him involved to look out for this car in the first place, wouldn't that give him at least reasonable suspicion to believe that there might be a reason to prolong the stop? Well, Deputy Hoslett had no facts, Your Honor. And Judge Brown... To say no facts. He had the fact of he had been directed to look out for this car on a walled-off stop, which he testified, now that's a credibility issue, whether or not you believe him, that he had done these before. He understood that he did those things because they suspected the car was carrying drugs. He had that much information. Sure, Your Honor. But after the legal traffic stop, there was no reliance, specifically, that Hoslett had. He didn't need it. That's... Unless you can say that the initial stop was illegal, he had him stop. It wasn't just a random pick out of the traffic flow. He was looking for the car, and he found that the guy was, in fact, speeding. That's not contested. So he had a legitimate reason to stop. Our concern is, as it was in Chavez Valenzuela, going back, is can officers stop somebody under a pretext of a violation? You know, there's a legitimate violation, but the real interest is stopping somebody for carrying drugs. And then they go on a fishing expedition. Unlike Chavez Valenzuela, they were inferring from his shaky behavior and driving slowly on the highway. Here, the officer at least had some reason at the inception, independent of the stop, to believe that this guy might have drugs in the car. And I'm asking you to help us sort out how it is that he couldn't have used that bit of information that he had to decide that this fellow might have drugs in the car. I would respectfully suggest, Your Honor, that once the stop was over, the detention was then illegal. And the detention itself was illegal because there were no specific articulable facts on which he could be then detained, and that it was ongoing for a much longer period than was in any other way reasonable in this circumstance. And when I talk about the causal factor and the reliance, it goes back to the whole origin of the collective knowledge doctrine, which is the courts make it very clear that officers on the street can rely on what other officers tell them under what this circuit has agreed is this appropriate order or request. In here, there was not an appropriate order or request. There wasn't a, stop Mr. Corberius and detain him and wait for us to arrive. And unlike Officer Holman and Ramirez, where they concerted movement was agents there after the stop all immediately convened on Mr. Ramirez and Mr. Beltran. Here, it was officers. There was nothing in the record to suggest that the canine unit was tied to the JTF, that Haase himself called for it. And that was an independent action that he took. It wasn't like the troops were coming in and could be exposed. Okay. Your time's up. Let's hear from the government and then we'll give you a minute response. Thank you, Your Honor. Thank you. Geoffrey Barrow on behalf of the United States. I'd like to start with where the court began, and that is that Mendez and Turbin provided an ultimate basis to uphold the district court's ruling in this case. Deputy Haas's questions and his request for consent to stop did not unduly prolong the duration of the stop in this case. Haas had testified that he completed the process of the traffic citation. He asked for consent to search. He testified that his search of the interior of the car that discovered the marijuana pipe in the backpack happened five to ten minutes after he initiated contact with the defendant. Now, this court can certainly uphold the district court's decision on any basis that's supported by the record. And the record in this case clearly does support upholding it on the basis of Turbin and Mendez. Of course, that wasn't the law at the time. Is the consent to the search challenged on appeal? I don't believe it is, Your Honor. The district court certainly found that the – And that's not challenged? I believe it's uncontested, Your Honor. As the Court is well aware, Chavez, Valenzuela, and Mendez were not the law at the time of the case. The government did withdraw its argument that the stop could be held solely on the basis – or the search could be held solely on the basis of the traffic stop. That was in light of the law in Mendez that suggested that those questions, they clearly weren't related to a traffic stop. And the request to consent, which occurred after the completion of the traffic stop, would unduly prolong the duration of the stop. The government, however, did at the trial court argue that the additional bit of information that Your Honor referred to, the additional bit that this request came from a narcotics unit, that that combined with his observations at the time, the fact that the defendant did not immediately yield to the sirens, that he followed them at a slow speed for a long time, the fact that he perceived the questions to be inconsistent between the two passengers, we argue that that little bit of information did permit or did provide reasonable suspicion to extend the duration of the stop. To be clear, the district court didn't agree with that argument, rejected that argument. But that, again, was based on Mendez and Chavez Valenzuela. The district court's decision in this case should also be upheld under the collective knowledge doctrine. In this case, there's no question, it's not contested, that the joint task force had probable cause to stop and search that car. It's uncontested that Agent Morris called LA, called the agents in Los Angeles to request a walled-off stop. The joint task force then began calling narcotics canine units on the I-5 corridor to find an available unit to conduct a walled-off stop. And the Kings County Narcotics Department relayed that to Sergeant Fry. Sergeant Fry then relayed his request to Deputy Hoslet. Deputy Hoslet's testimony about what he was requested to do, he did testify that he was asked to keep an eye out for the black Mercedes traveling northbound on I-5 with Oregon plates. And he testified that that information had come from his narcotics department through Sergeant Fry. Deputy Hoslet reasonably knew that this was a request for a walled stop. It wasn't simply a request to keep an eye out for somebody. It was a request for a walled stop. He described his request from the sergeant as a request for a walled stop. The district court found that Hoslet was asked to do a walled stop on behalf of the As I'll count on Judge Breyer to remind the panel, district court's factual findings are that the findings are significantly deferential. He loses all authority once he sits with us. You do understand. He's diminished in authority. At any rate, we certainly have no error here, but the finding, even though a different judge may reach a different conclusion, it's not clearly erroneous. If there are no further questions, I will submit on the briefs on the argument that suppression is not the appropriate remedy in this case. We'd ask that the district court's decision be affirmed. Thank you. Thank you very much. Would you like a minute? Just briefly, Your Honor. I'd like to address the consent issue, if I could. The court didn't make a finding that there was an alternative basis, nor did the government urge that. The government urged that the court rule on the collective knowledge doctrine and then later suggested there were other ways that the court could find. So the consent issue, I do not believe, is something that the government... It hasn't been challenged. You haven't appealed on the ground that the consent was involuntary, have you? We have not appealed that, Your Honor, but the government didn't urge that as a reason and basis to uphold the search and uphold the detention. Can't we go back? Looking at it, can't we go back and say, well, all right, whatever the arguments are and so forth and so on, there is consent? And that's not challenged. Can't an appellate court look at the record and come to that conclusion? In other words, say, well, that was one of the findings of the district court. Why can't we accept it? It's not challenged. Well, it wasn't a finding of the district court, Your Honor. I don't believe. I don't have the order here directly with me. I don't believe that was a finding of the district court and it certainly wasn't brought forth by the government in its arguments and wasn't urged. The government urged that if the detention was found to be illegal to rely on the collective knowledge doctrine and then fell back to the Hudson argument. And that's what they urged. Well, I guess another question then is, was it challenged? Was the consent challenged in the district court? We did challenge it in the district court, but that's not on which the court relied and the government did not rely upon it in its argument, which is why I didn't feel it necessary to brief it to the court here today. Okay. Thank you very much. Thank you both sides for your helpful arguments. The United States versus Covarrubias is now submitted for a decision. The next case on the argument calendar is Osterhoff versus Lampert. Yes. I hope I haven't jinxed it. When you're ready.
judges: Fletcher, Fisher, Breyer